MARC J. FAGEL (Cal. Bar No. 154425)
MICHAEL S. DICKE (Cal. Bar No. 158187)
　　dickem@sec.gov
SHEILA O'CALLAGHAN (Cal. Bar No. 131032)
　　ocallaghans@sec.gov
CATHERINE D. WHITING (Cal. Bar No. 190436)
　　whitingc@sec.gov

Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
44 Montgomery Street, 26th Floor
San Francisco, California 94104
Telephone: (415) 705-2500
Facsimile: (415) 705-2501

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. CV 09-4046 |
| Plaintiff, | |
| v. | COMPLAINT |
| VERIFONE HOLDINGS, INC., AND PAUL PERIOLAT, | |
| Defendants. | |

Plaintiff Securities and Exchange Commission (the "Commission") alleges:

**SUMMARY OF THE ACTION**

1.　　This action involves the reporting of dramatically inflated operating income by Silicon Valley technology company VeriFone Holdings, Inc. ("VeriFone" or "the Company"). Over three consecutive quarters in 2007, company personnel, facing an unexpected decline in gross margins, made unsupportable alterations to Verifone's accounting records, inflating

income by millions of dollars. When the misrepresentations came to light in December 2007, the company's stock price dropped 46%, resulting in a one-day drop in market capitalization of *$1.8 billion*.

2. VeriFone's overstated operating income was principally the result of erroneous inventory accounting adjustments made by Paul Periolat, the Company's former supply chain controller. Periolat made the unsupportable adjustments after VeriFone's internal reporting showed preliminary quarterly results substantially lower than expected. As a result of Periolat's subsequent accounting adjustments, VeriFone was able to announce final quarterly results in line with its previous public forecasts.

3. Periolat ignored information that indicated that his adjustments were incorrect, and repeatedly failed to confirm his adjustments with others at VeriFone who would have realized the adjustments were incorrect. Periolat was able to make the adjustments, in part, due to VeriFone's lack of adequate internal controls. As a result, each quarter Periolat made millions of dollars in incorrect adjustments to VeriFone's inventory accounting records without having the adjustments scrutinized or approved by any more senior VeriFone management.

**JURISDICTION AND VENUE**

4. The Commission brings this action pursuant to Sections 21(d), 21(e), and 21A of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u(d), 78u(e), and 78u-1].

5. This Court has jurisdiction over this action pursuant to Sections 21(e), 21A and 27 of the Exchange Act [15 U.S.C. §§ 78u(e), 78u-1 and 78aa].

6. The Defendants, directly or indirectly, made use of the means or instrumentalities of interstate commerce, or of the mails, or of the facilities of a national securities exchange in connection with the transactions, acts, practices and courses of business alleged herein.

7. Venue in this District is proper pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa] because a substantial part of the acts and transactions constituting the violations alleged in this Complaint occurred within the Northern District of California, and because the Defendants reside or transact business in the district.

## INTRADISTRICT ASSIGNMENT

8. Under Civil Local Rule 3-2, this civil action should be assigned to the San Jose Division, because a substantial part of the events which give rise to the claim occurred in Santa Clara County.

## DEFENDANTS

9. VeriFone Holdings, Inc. is incorporated in Delaware with headquarters in San Jose, California. VeriFone designs, markets and services transaction automation systems that enable secure electronic payments among consumers, merchants, and financial institutions. VeriFone's common stock was registered during the relevant period with the Commission under Section 12(b) and was listed on the New York Stock Exchange under the symbol "PAY."

10. Paul Periolat, age 38, is a resident of Rocklin, California. He was VeriFone's supply chain controller during the relevant period but is no longer employed by the company.

## FACTUAL ALLEGATIONS

**A. VeriFone's Materially False Financial Results for the First Quarter of Fiscal 2007**

11. VeriFone relied on gross margin as an indicator of its financial results and routinely provided forecasts of its quarterly gross margins to investment analysts who followed the Company. Gross margin is a measure of the company's profitability, as it reflects revenue less cost of goods sold ("COGS").

12. As supply chain controller, one of Periolat's responsibilities was the forecast of VeriFone's annual and quarterly gross margins as well as to monitor and update the forecast throughout the year. In addition, Periolat was responsible for making final inventory-related valuation adjustments, such as royalties, warranty reserves and reserves for obsolete inventory.

13. At the end of each quarter, VeriFone prepared internal reports of is preliminary financial results, which were distributed to the Company's finance personnel to verify for accuracy and updates. One of the reported results was the Company's gross margin.

14. In early February 2007, during the quarterly close process for the fiscal year's first quarter ending January 31, 2007, the internal preliminary results showed a gross margin of

42.8%. This was approximately four percentage points below Periolat's internal forecast and the Company's guidance to analysts.

15. Periolat and others were charged with determining why there was such a large discrepancy. In the past, Periolat's forecasts had been accurate and relied on by VeriFone senior management, so there was considerable concern over the difference between the preliminary results and the forecast.

16. Because gross margin is the result of revenue minus COGS, if COGS is reduced, gross margin is necessarily increased. One way to reduce COGS is to increase inventory. Accordingly, Periolat and others focused on COGS and inventory accounting to determine the reason for the variance.

17. With no answer forthcoming, VeriFone's chief executive officer and then-chief financial officer began to express increasing frustration. They sent emails characterizing the low gross margin as an "unmitigated disaster" and instructed management to "figure it [and related low results] out." In addition, Periolat and others were provided with analyses which laid out the relation between specific reductions in COGS and the corresponding increase in gross margin.

18. Shortly thereafter, Periolat determined that the problem with the gross margin had been caused by incorrect accounting for inventory by a foreign subsidiary. Periolat then calculated adjustments which increased inventory by approximately $7 million and therefore decreased COGS. He then caused the adjustments to be made by manual entries to VeriFone's corporate records. As result of decreasing COGS, VeriFone's gross margin increased to approximately 47.5%.

19. Periolat, however, failed to take adequate steps to verify that his inventory accounting adjustment was appropriate. Among other things, Periolat failed to confirm his adjustments with the foreign subsidiary's controller. Had he done so, Periolat would have learned that the subsidiary had reported its inventory correctly, making Periolat's $7 million manual entry adjustment incorrect.

20. Further, Periolat had been aware before making the adjustments that the subsidiary had proper procedures in place for accounting for inventory. In addition, Periolat

learned a month after the quarter close that the subsidiary had correctly accounted for inventory at least through the end of the last fiscal year, putting him on notice that his adjustments may have been incorrect. Nonetheless, Periolat did not take steps to verify or correct his prior inventory adjustments.

21. Periolat was able to make his unwarranted adjustments because VeriFone had few internal controls to prevent them. Neither Periolat's supervisor nor any other senior manager reviewed Periolat's work. Nor were there proper controls in place to prevent the person responsible for forecasting financial results from making adjustments which allowed the company to meet the forecasts.

22. VeriFone filed its Form 10-Q for the first quarter of fiscal year 2007 on March 9, 2007. As a result of the false accounting adjustments, VeriFone reported inaccurate inventory results and overstated its net income by approximately $12.4 million. In addition, VeriFone announced to the market that it had achieved a 47.1% gross margin, in line with senior management's previous guidance of the "long term model of 42% to 47%."

B.  **VeriFone's Materially False Financial Results for the Second and Third Quarters**

23. As had happened at the close of the first quarter, during the second and third quarterly close process, VeriFone's internal preliminary results reflected lower gross margins than the company's internal forecasts or guidance provided to the street for both the second and third quarters. Preliminary results for the second quarter showed a gross margin of 43.7%, versus the 46 to 48% forecast. In the third quarter, the preliminary results reflected a gross margin of 40.5%, rather than the guidance of between 47% and 48%.

24. At the end of the second quarter, Periolat determined that the reason for the lower-than-expected gross margin was a failure to properly account for in-transit inventory, a category of inventory reflecting inventory shipped overseas from a VeriFone subsidiary or manufacturer but not yet received in the United States. Based on shipping and receiving information, Periolat incorrectly determined that there was a gap between inventory that had been shipped and inventory that had been received of approximately $10.6 million. After

seeking and receiving positive feedback from a subordinate in his department, Periolat gave his calculations to another subordinate to prepare a manual journal voucher which would be used to make manual adjustments to VeriFone's corporate records. Periolat then signed the vouchers as a "reviewer." Then, the information on the voucher was manually entered into VeriFone's corporate records.

25. Periolat repeated the process in the third quarter, calculating purported "in-transit" inventory to be manually adjusted by a subordinate and then "reviewing" and approving the adjustment. For the second and third quarters combined, he authorized approximately $20 million of increases to inventory. Doing so had the effect of decreasing COGS by a corresponding amount and thus increasing the gross margins.

26. There was no reasonable basis for the manual entries. Periolat's adjustments relied on an unfounded assumption that goods were in transit between VeriFone's international headquarters and the United States. However, goods were never actually shipped between the international headquarters and the United States and as a result could not have been "in transit."

27. As during the first quarter closing process, no one reviewed Periolat's work during the second and third quarters closing process. Senior management was aware of his adjustments but never questioned them. Nor did senior management question the forecasts for the second and third quarters; instead, they simply assumed the preliminary actual results were wrong when they differed from the forecasts. In addition, despite monthly reports showing a sharp and unprecedented increase in inventory as a result of Periolat's adjustments, senior managers never questioned the increases. In short, VeriFone's internal controls were inadequate and did not detect the adjustments made by a mid-level controller who was able to make multi-million entries which grossly distorted the company's true financial results.

28. As a result of Periolat's adjustments, VeriFone falsely met its internal forecasts and the guidance provided to analysts for the second and third quarters of fiscal 2007. In its Forms 10-Q filed on May 31, 2007 and September 7, 2007, VeriFone reported inaccurate operating income. The Forms 10-Q were future incorporated by reference in VeriFone's Form S-8 filed November 9, 2006.

### C. VeriFone's Restatement

29. The accounting irregularities came to light in late November 2007 during the annual audit. Periolat was unable to explain his adjustments and ultimately concluded that they were wrong. He then reported the problem to senior management.

30. On December 3, 2007, the Company announced that its financials for the last three quarters would need to be restated. That day, the company's share price dropped from the previous close of $48.08 to $26.03, or an approximately 46% drop. The drop amounted to a loss of approximately $1.8 billion in market capitalization.

31. On August 19, 2008, the Company issued restated financials for the first three quarters of its fiscal 2007 year. For the first quarter, in addition to other adjustments, the company recorded an increase of $7.7 million to the total cost of net revenues as a result of Periolat's overhead adjustments. This contributed to an overall decrease in the operating income from $11.8 million to a loss of $602,000.

32. Similarly, in the second and third quarters, the company reported an increase of $11.5 million and $8.4 million, respectively, in the total cost of net revenues, in order "to eliminate intercompany in-transit inventory that did not exist." As a result of these and other adjustments, VeriFone's operating income dropped from $17.7 million to $7.5 million for the second quarter, and from $36.5 million to $21.8 million for the third. Cumulatively, operating income for the three quarters fell from $65.6 million to $28.6 million, or an overstatement of 129%.

### FIRST CLAIM FOR RELIEF

*Violation of Section 17(a)(2) and (3) of the Securities Act by Periolat*

33. Paragraphs 1 through 34 are re-alleged and incorporated herein by reference.

34. By engaging in the conduct above, Periolat negligently violated Sections 17(a)(2) and (3) of the Securities Act, which prohibits anyone, directly or indirectly, in the offer or sale of securities, by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails:

(a) obtained money or property by means of untrue statements of material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

                (b) engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchasers.

        35.     Based on the above conduct and the factual allegations contained in this Complaint, Periolat violated, and unless restrained and enjoined will continue to violate, Section 17(a)(2) and (3) of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. § 77q(a)(2) and (3)].

## SECOND CLAIM FOR RELIEF

*Violation of Section 13(b)(5) of the Exchange Act by Periolat*

        36.     Paragraphs 1 through 34 are re-alleged and incorporated herein by reference.

        37.     By engaging in the conduct alleged above, Periolat violated 13(b)(5) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78m(b)(5)] which prohibits anyone from knowingly circumventing a system of internal accounting controls.

        38.     Based on the conduct alleged above, Periolat violated, and unless restrained and enjoined will continue to violate, Section 13(b)(5) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78m(b)(5)].

## THIRD CLAIM FOR RELIEF

*Violations of Exchange Act Rule 13b2-1*

        39.     Paragraphs 1 through 34 are re-alleged and incorporated herein by reference.

        40.     By engaging in the conduct alleged above, Periolat falsified or caused to be falsified VeriFone's books, records, and accounts in violation of Rule 13b2-1 under the Exchange Act [17 C.F.R. § 240.13b2-1].

        41.     Based on the conduct alleged above, Periolat violated, and unless restrained and enjoined will continue to violate, Rule 13b2-1 under the Exchange Act [17 C.F.R. § 240.13b2-1].

**FOURTH CLAIM FOR RELIEF**
*Violations of and Aiding and Abetting Violations of Exchange Act
Section 13(a) and Rules 12b-20, 13a-11 and 13a-13 Thereunder by Defendants)*

42. Paragraphs 1 through 34 are re-alleged and incorporated herein by reference.

43. Based on the conduct alleged above, VeriFone violated, and unless restrained and enjoined, will continue to violate Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20, 13a-11, and 13a-13 thereunder [17 C.F.R. §§ 240.12b-20, 240.13a-11 and 240.13a-13], which obligate issuers of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78*l*] to file with the Commission accurate periodic reports, including current and quarterly reports.

44. By engaging in the conduct alleged above, Periolat knowingly provided substantial assistance to VeriFone's filing of materially false and misleading reports with the Commission.

45. Based on the conduct alleged above, Periolat aided and abetted VeriFone's violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20, 13a-11, and 13a-13 [17 C.F.R. §§ 240.12b-20, 240.13a-11, and 240.13a-13] thereunder. Unless restrained and enjoined, Periolat will continue to aid and abet such violations.

**FIFTH CLAIM FOR RELIEF**
*Violations of and Aiding and Abetting Violations of Exchange Act Section 13(b)(2)(A) by
Defendants*

46. Paragraphs 1 through 34 are re-alleged and incorporated herein by reference.

47. Based on the conduct alleged above, VeriFone violated, and unless restrained and enjoined will continue to violate, Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)], which obligates issuers of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78*l*] to make and keep books, records and accounts which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer.

48. By engaging in the conduct alleged above, Periolat knowingly provided substantial assistance to VeriFone's to failure make and keep books, records and accounts which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of its assets.

49. Based on the conduct alleged above, Periolat aided and abetted violations by VeriFone of Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)]. Unless restrained and enjoined, Periolat will continue to aid and abet such violations.

## SIXTH CLAIM FOR RELIEF
*Violations of and Aiding and Abetting Violations of Exchange Act Section 13(b)(2)(B) by Defendants*

50. Paragraphs 1 through 34 are re-alleged and incorporated herein by reference.

51. Based on the conduct above, VeriFone violated, and unless restrained and enjoined will continue to violate Section 13(b)(2)(B) of the Exchange Act [15 U.S.C. § 78m(b)(2)(B)], which obligates issuers of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78*l*] to devise and maintain a sufficient system of internal accounting controls.

52. By engaging in the conduct alleged above, Periolat knowingly provided substantial assistance to VeriFone's failure to devise and maintain a sufficient system of internal accounting controls.

53. Based on the conduct alleged above, Periolat aided and abetted violations by VeriFone of Section 13(b)(2)(B) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)]. Unless restrained and enjoined, Periolat will continue to aid and abet such violations.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court:

I.

Permanently enjoin VeriFone from directly or indirectly violating Sections 13(a), 13(b)(2)(A), and 13(b)(2)(B) [15 U.S.C. §§ 78m(a), 78m(b)(2)(A), and 78m(b)(2)(B)] and Rules 12b-20, 13a-11, and 13a-13 [17 C.F.R. §§ 240.12b-20, 240.13a-11, and 240.13a-13] thereunder.

II.

Permanently enjoin Periolat from directly or indirectly Section 17(a)(2) and (3) of the Securities Act [15 U.S.C. § 77q(a)(2) and (3)], Section 13(b)(5) of the Exchange Act [15 U.S.C. §§ 78m(b)(5)], and Rule 13b2-1 [17 C.F.R. § 240.13b2-1] and from aiding and abetting violations of Sections 13(a), 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78m(a), 78m(b)(2)(A) and 78m(b)(2)(B)] and Rules 12b-20, 13a-11, and 13a-13 [17 C.F.R. §§ 240.12b-20, 240.13a-11, and 240.13a-13] thereunder.

III.

Order Periolat to pay civil penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1].

IV.

Grant such other relief as this Court may deem just and appropriate.

Dated: September 1, 2009

Respectfully submitted,

CATHERINE D. WHITING
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION